**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

MERARY A. S.,                                    )     No. CV 19-8100-PLA
                                                 )
                    Plaintiff,                   )     **MEMORANDUM OPINION AND ORDER**
                                                 )
           v.                                    )
                                                 )
ANDREW M. SAUL, COMMISSIONER                     )
OF SOCIAL SECURITY                               )
ADMINISTRATION,                                  )
                                                 )
                    Defendant.                   )
_____          )

**I.**

**PROCEEDINGS**

     Merary A. S.[1] ("plaintiff") filed this action on September 18, 2019, seeking review of the Commissioner's denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments.  The parties filed Consents to proceed before a Magistrate Judge on October 8, 2019, and October 11, 2019.  Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on June 23, 2020, that

---

    [1]   In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date.  See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1978.  [Administrative Record ("AR") at 26, 185, 187.]  She has past relevant work experience as a bookkeeper, general ledger.  [Id. at 25, 62-63.]

On December 28, 2015, plaintiff protectively filed an application for a period of disability and DIB and SSI payments alleging that she has been unable to work since December 18, 2013. [Id. at 16; see also id. at 185-86, 187-95.]  After her applications were denied, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 114-15.]  A hearing was held on April 25, 2018, at which time plaintiff appeared represented by an attorney, and testified on her own behalf.  [Id. at 32-69.]  A vocational expert ("VE") also testified.  [Id. at 60-64.] On September 6, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from December 18, 2013, the alleged onset date, through September 6, 2018, the date of the decision.  [Id. at 16-27.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 183-84.]  When the Appeals Council denied plaintiff's request for review on July 15, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.      THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Lounsburry, 468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsbury, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 18, 2013, the alleged onset date.[2] [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of fibromyalgia; bilateral carpal tunnel syndrome, status post

---

[2]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. [AR at 18.]

bilateral release surgery; spondylosis and disc degeneration of the lumbar spine; chronic traumatic disorder of the cervical spine; and obesity, status post bariatric surgeries with complications. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 19.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] as follows:

> [She can] lift and carry 20 pounds occasionally, 10 pounds frequently, standing and walking for 6 hours during an 8-hour workday, sitting for 6 hours. [She] is limited to frequent pushing, pulling and postural activity. [She] may frequently finger and handle, but is limited to no more than 45 minutes per hour of computer work.

[Id. at 20.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as a bookkeeper, general ledger. [Id. at 25-26, 61-63.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "office helper" (Dictionary of Occupational Titles ("DOT") No. 239.567-010), as an "assembler" (DOT No. 726.687-058), and as a "mail sorter" (DOT No. 209.687-026). [AR at 26, 63.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 18, 2013, through September 6, 2018, the date of the decision. [Id. at 27.]

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1

**V.**

2

**THE ALJ'S DECISION**

3        Plaintiff contends that the ALJ erred when he:  (1) rejected or ignored the opinions of

4    plaintiff's treating sources:  Drs. Knight, Alpern, Salick, Telusca, Hymes, Litoff, and Wu, in favor

5    of the opinions of the orthopedic consultative examiner, Dr. Chuang; (2) discounted plaintiff's

6    subjective symptom testimony; and (3) determined plaintiff's RFC. [JS at 3.]  As set forth below,

7    the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

8

9    **A.    MEDICAL OPINIONS**

10          **1.    Legal Standard**

11        "There are three types of medical opinions in social security cases:  those from treating

12   physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

13   Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5]  The Ninth

14   Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given

15   'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory

16   diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

17   case record.'"  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

18   404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be

19   given to the opinion of a treating source than to the opinion of doctors who do not treat the

20   claimant."  Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r of Soc. Sec.

21   Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d

22

23          [5]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R.
     § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security
24   Administration "will not defer or give any specific evidentiary weight, including controlling weight,
     to any medical opinion(s) or prior administrative medical finding(s), including those from your
25   medical sources."  20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating
     source," as well as what is customarily known as the treating source or treating physician rule.
26   See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However,
     the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed
27   plaintiff's claim pursuant to the treating source rule set out herein.  See also 20 C.F.R. § 404.1527
     (the evaluation of opinion evidence for claims filed prior to March 27, 2017).
28

1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician.  Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

/

/

### 2. Plaintiff's Treating and Examining Doctors

Plaintiff contends that the ALJ "engaged in improper cherry picking from the records and rejected or ignored reports of clinical findings, symptoms and opinions as to limitations that were greater than those found by the ALJ in the RFC assessment." [JS at 5.] She further contends that the ALJ erred in affording greater weight to the opinion of the consultative examiner "over the opinions of [plaintiff's] specialist treating and examining physicians" without providing "sufficient reasoning for rejecting these opinions." [Id.]

Specifically, plaintiff asserts that the ALJ erred in assessing the opinions of the following providers:

### a. John T. Knight, M.D.

Dr. Knight began treating plaintiff in December 2013 for symptoms of numbness and tingling in her hands. [AR at 500.] On examination, Dr. Knight found "mild TMC[6] joint tenderness bilaterally, [and] mild to moderate bilateral radial tunnel tenderness and positive Phalen's test bilaterally." [Id.] He diagnosed plaintiff with carpal tunnel syndrome and cumulative trauma disorder ("CTD"), and opined that she required a 15-minute break from keyboard use every hour. [Id. at 501.] In March 2014, Dr. Knight noted that plaintiff reported that her symptoms were increasing, and found on examination "mild tenderness at the radial tunnel bilaterally, mild volar distal forearm tenderness bilaterally and mild TMC joint tenderness bilaterally." [Id. at 511.] He opined that plaintiff was "temporarily totally disabled." [Id.] In August 2014, Dr. Knight further opined on a check-box form that plaintiff was "totally incapacitated at this time." [Id. at 518.] In October 2014, Dr. Knight added CTD of the cervical spine along with possible cervical radiculopathy and possible bilateral radial tunnel syndrome to his diagnoses. [Id. at 519.] In March 2016, plaintiff reported increasing pain in her left arm and forearm, and on examination Dr. Knight found "mild radial tunnel tenderness bilaterally and mild tenderness in the lateral

---

[6]   The trapeziometacarpal joint is located at the base of the thumb between the trapezium bone of the wrist and the first metacarpal bones of the thumb.  See https://www.healthline.com/health/saddle-joint#examples (last visited July 14, 2020).

epicondyles [of] both elbow[s]." [Id. at 533.] In August 2016, plaintiff reported increased swelling and pain in both hands and Dr. Knight noted mild swelling in the dorsal aspect of the right hand and wrist, mild ecchymosis in the dorsal aspect of the left hand, and mild to moderate left radial tunnel tenderness. [Id. at 539.] In May 2017, Dr. Knight opined that plaintiff needed a consult with a rheumatologist for fibromyalgia. [Id. at 551.] At that visit, plaintiff reported that she continued to experience pain throughout both upper extremities and numbness and tingling in both hands, and on examination Dr. Knight found mild radial tunnel tenderness bilaterally, mild tenderness medial epicondyle both elbows, positive Tinel's at the median nerve of both wrists, mild bilateral trapezial tenderness, and spasm and mild limitation of cervical spine range of motion with discomfort. [Id.] In September 2017, plaintiff again complained of numbness and tingling in the right little and ring fingers and pain throughout the upper extremities, and on examination Dr. Knight found positive Tinel's at the ulnar nerve on the right elbow, mild radial tunnel tenderness bilaterally, and mild bilateral trapezial tenderness. [Id. at 555.] In October 2017, plaintiff complained of pain at the right lateral elbow and on examination exhibited mild to moderate tenderness at the right elbow lateral epicondyle, and Dr. Knight diagnosed right elbow lateral epicondylitis. [Id. at 557.] Similarly, in November and December 2017, plaintiff complained of pain in both upper extremities and Dr. Knight found tenderness at the right lateral elbow. [Id. at 559, 561.]

Plaintiff acknowledges that the ALJ adopted Dr. Knight's initial work restriction limiting plaintiff to no more than 45 minutes per hour of computer work. [JS at 9 (citing AR at 20; see also id. at 501).] She argues, however, that he failed to properly consider Dr. Knight's longitudinal records, which, she contends, "indicate that this [RFC] restriction failed to account for [plaintiff's] ongoing symptoms from March 2014 through December 2017"; failed to take into account Dr. Knight's opinion that plaintiff was "totally incapacitated" as of August 2014, as the term "temporary total disability was a worker's compensation term of art"; and failed to discuss Dr. Knight's "repeated reports" that plaintiff's pain worsened from 2013 to 2017. [Id. (citing AR at 24).]

As noted by the ALJ, Dr. Knight is a hand and wrist specialist who provided regular treatment for plaintiff's carpal tunnel syndrome and CTD. [AR at 20, 500, 507, 516, 521, 523,

535, 547, 549, 551, 555).]  Notwithstanding plaintiff's characterization of her pain symptoms at her visits to Dr. Knight -- which plaintiff mischaracterizes as clinical findings made by Dr. Knight -- the record reflects that his actual objective clinical findings reveal mostly mild tenderness, intact sensory examinations, and normal range of motion in plaintiff's upper extremities bilaterally.  For instance, the ALJ noted that the records "repeatedly" reflected that plaintiff exhibited full ranges of motion in her hands and wrist; generally only mild -- and never more than mild to moderate -- tenderness in the wrists and hands; and a grip strength of 20 pounds and rarely less.  [Id. at 20.]  Additionally, two months after Dr. Knight stated plaintiff is "totally incapacitated," Dr. Knight reported plaintiff's "sensory and motor exam intact"; mild tenderness at the radial tunnel bilaterally; negative Tinel signs at both wrists and elbows; a full range of motion in both wrists and elbows, and all digits of both hands; mild bilateral trapezial tenderness and spasm; and mild limitation of cervical spine with range of motion.  [Id. (citing AR at 519).]  Likewise, when plaintiff reported swelling in her hands, examination showed only mild signs of swelling, no color or temperature change, and a full range of motion in the wrist, hand, and all digits.  [Id. (citing AR at 539).]  Although Dr. Knight originally opined that plaintiff could perform her usual job duties if she was limited to no more than 45 minutes of computer work in an hour, and later found her to be temporarily totally disabled ("TTD") in the worker's compensation system, TTD is a term of art that simply means that an individual cannot return to her regular job duties.  [Id. at 21 (citing AR at 24).]  Under the circumstances here, the ALJ was correct to give Dr. Knight's report of plaintiff as "temporarily totally disabled" little weight, as (1) it reflects a term of art in the worker's compensation field, and (2) it was "based on examinations that did not reveal more than mild to moderate degrees of tenderness, treatment which was confined to Plaintiff's neck and upper extremities, relatively modest symptoms and limitations, and no abnormalities or deficits consistent with an inability to perform all work activity."  [Id. at 21 (citing AR at 24).]

Based on the foregoing, the Court finds that the ALJ properly considered Dr. Knight's opinions when he found that plaintiff could not return to her past work, and when he limited plaintiff to no more than 45 minutes per hour of computer work.

Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence,

1    for discounting Dr. Knight's opinions.

2

3         **b.    Harvey L. Alpern, M.D.**

4         Dr. Alpern performed a qualified medical examination for plaintiff's worker's compensation

5    case on September 10, 2014.  [AR at 643-47.]  His preliminary impression on examination was

6    obesity; history of gastroesophageal reflux disease ("GERD"), improved after surgery; orthopedic

7    diagnoses; and psychiatric diagnoses.  [Id. at 646.]  He had not reviewed any records at the time

8    of that examination.  [Id.]  On December 27, 2014, Dr. Alpern issued a "Panel Qualified Medical

9    Evaluator's Report with Review of Medical Records."  [Id. at 648-715.]  After reviewing plaintiff's

10   medical records dating from 2007 to 2014, Dr. Alpern stated that he found no change in his

11   September 2014 "diagnosis or treatment recommendations."[7]  [Id. at 714.]

12        On March 11, 2015, Dr. Alpern again examined plaintiff for a "Panel Qualified Medical Re-

13   evaluation."  [Id. at 716-20.]  Dr. Alpern stated that he had previously reviewed plaintiff's

14   "extensive medical records," and noted that "[i]nterestingly," "her carpal tunnel symptoms have

15   markedly improved and there are several recordings of electromyographic readings of the upper

16   extremities, which are somewhat inconsistent with the prior treatments."  [Id. at 716.]  At the March

17   11, 2015, visit, plaintiff primarily complained of abdominal pain, as well as pain in her neck,

18   shoulders, back, forearms, elbows, and knees.  [Id. at 717.]  Dr. Alpern noted that plaintiff

19   complained of pain throughout her body, consistent with fibromyalgia, and found on examination

20   that she exhibited 16 of 18 tender points for fibromyalgia, as well as irritable bowel syndrome,

21   which he stated is also consistent with fibromyalgia.[8]  [Id. at 719.]  Dr. Alpern stated that plaintiff

22   _____

23        [7]    In his September 2014 report, however, Dr. Alpern did not provide any treatment
     recommendations, although he did note that plaintiff "can probably be rated soon, if not now, for
24   her gastrointestinal status."  [AR at 646; see also id. at 644 (noting that plaintiff's GERD was
     markedly improved after surgery, and she only has occasional nausea, very rare vomiting, and
25   very rare pain).]

26        [8]    Fibromyalgia is a syndrome that "is poorly understood within much of the medical community."
27   Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted).  Significantly, there is
     no known cause or cure, and fibromyalgia "is diagnosed entirely on the basis of patients' reports of
28                                                                                    (continued...)

1   is "markedly symptomatic" with respect to her subjective pain complaints, and recommended

2   treatment by a pain physician who understands fibromyalgia, as well as psychiatric support.  [Id.]

3          On May 4, 2016, Dr. Alpern provided a "Supplemental Report with Review of Medical

4   Records."  [Id. at 724-28.]  There is no indication that he re-examined plaintiff for purposes of that

5   report.  Instead, Dr. Alpern reviewed a February 9, 2016, internal medicine evaluation conducted

6   by Allen Salick, M.D., a rheumatologist.  [Id. at 724; see also id. at 566-642 (Dr. Salick's report).]

7   Dr. Alpern noted that after laboratory studies to rule out other inflammatory arthropathies, and

8   physical examination by Dr. Salick, plaintiff was diagnosed by Dr. Salick with fibromyalgia with

9   associated somatic symptoms of irritable bowel syndrome, carpal tunnel syndrome, depression,

10  problems sleeping, chronic fatigue, depression, and anxiety.  [Id. at 726.]  Dr. Alpern noted Dr.

11  Salick's statement that plaintiff "cannot return to her previous occupation even with restrictions

12  because she tried to return to work after the surgery but her symptoms returned."  [Id. at 727; see

13  also id. at 612.]  Dr. Alpern concluded that Dr. Salick's records "support industrial causation for

14  use of pain medication."  [Id. at 728.]

15         Plaintiff complains that the ALJ erred as he "provided little discussion of Dr. Alpern's reports

16  other than to conclude that Dr. Alpern's opinion that [plaintiff's] symptoms were 'markedly

17  symptomatic' was singular and dated from March 2015."  [JS at 10 (citing AR at 21).]

18         Defendant responds that the ALJ considered Dr. Alpern's reports and noted "some

19  inconsistencies in how Dr. Alpern described Plaintiff's fibromyalgia symptoms:  in March 2015

20

21         [8](...continued)

22  pain and other symptoms."  Id. at 590; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)
    ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to

23  disability law, its symptoms are entirely subjective.").  Courts have noted that there are no laboratory
    or diagnostic tests that can confirm the presence of fibromyalgia.  Benecke, 379 F.3d at 590 (citations

24  omitted); Sarchet, 78 F.3d at 306; Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003).
    Hence, fibromyalgia is often diagnosed by eliminating other possible conditions and confirming the

25  presence of the disease's symptoms: widespread pain existing for at least three months, fatigue,
    disturbed sleep, stiffness, and tenderness in at least eleven of eighteen specified sites ("trigger points")

26  on the body.  Brosnahan, 336 F.3d at 672 n.1 ("[d]iagnosis [of fibromyalgia] is usually made after
    eliminating other conditions"); Preston v. Sec'y of Health and Human Servs., 854 F.2d 815, 818 (6th

27  Cir. 1998) ("no objective tests . . . can conclusively confirm [fibromyalgia]"); Rollins, 261 F.3d at 855

28  (listing fibromyalgia's symptoms (quoting Sarchet, 78 F.3d at 306)).

reporting Plaintiff as markedly symptomatic and in May 2016, her symptoms as constant and moderate." [Id. at 22 (citing AR at 21, 719, 726).]  Defendant notes that the ALJ also found "an absence of contemporaneous notes from which to draw any conclusions regarding the level of [plaintiff's] symptoms." [Id. (citing AR at 21).]  Similarly, with respect to Dr. Alpern's statement that plaintiff's gastric impairments had some impact on her physically and, therefore, on her ability to function [AR at 722 (noting that future medical care "should include the ability for her to see a gastroenterologist when any flare-up occurs")], defendant notes that the ALJ found no evidence of current symptoms and little mention of any significant gastritis, or GERD, "suggesting symptoms that were isolated and transitory." [JS at 22-23 (citing AR at 24-25, 644, 692-94, 722).]

The Court notes that Dr. Alpern's March 2015 examination reflected that plaintiff exhibited "classic spots of tender points for fibromyalgia positive in at least 16 out of the 18, but she also has some tenderness in neutral areas." [AR at 718.]  As a result of his findings, and plaintiff's subjective complaint of "pains throughout her body," Dr. Alpern deemed plaintiff to be "markedly symptomatic." [Id. at 719 (emphasis added).]  Dr. Alpern did not, however, draw any conclusions regarding the level of plaintiff's symptoms and there is no evidence that plaintiff described the level of her symptoms to Dr. Alpern.  [See id. at 717 (noting that plaintiff "complains of pain in her neck, shoulders, back, forearms, elbow, and knees on a daily basis").]  Thus, the ALJ's determination that there were no contemporaneous treatment notes supporting Dr. Alpern's March 2015 statement regarding the "level" of plaintiff's symptoms is only partially accurate -- there indeed were no contemporaneous notes; there also was, however, no conclusion suggested by Dr. Alpern about the level of plaintiff's symptoms, only that plaintiff was markedly symptomatic in that she was positive for 16 out of 18 fibromyalgia trigger points and still complaining of pain -- at an unspecified level -- throughout her body.

Moreover, in May 2016, Dr. Alpern did not perform his own examination and was only reporting on his review of rheumatologist Dr. Salick's February 2016 opinion that plaintiff met the requirements for a diagnosis of fibromyalgia, with "widespread pain and tender points in the appropriate locations as well as somatic symptoms typical of this syndrome namely a non-restorative sleep disorder, chronic fatigue and problems sleeping, Irritable Bowel Syndrome, and

depression." [Id. at 611.]  Like Dr. Alpern, Dr. Salick also determined that plaintiff was positive for 16 out of the 18 tender points.  [Id. at 605.]  However, as noted by Dr. Alpern, *Dr. Salick* described the level of plaintiff's subjective pain *symptoms* as "constant and moderate."  [Id. at 612.]

Based on the foregoing, the Court finds that Dr. Alpern did not make any inconsistent statements himself, and his description of plaintiff as "markedly *symptomatic*" for a fibromyalgia diagnosis, due to the fact that she was positive for 16 out of 18 trigger points and complaining of pain, was corroborated by Dr. Salick (and others, such as Dr. Wu), also finding a significant number of positive trigger points.  Additionally, Dr. Alpern's description of plaintiff as "markedly *symptomatic*," was *not* inconsistent with Dr. Salick's description of plaintiff's subjective *symptoms* as being at a "constant and moderate" *level* -- the words "symptomatic" and "symptoms" in the two statements having clearly different meanings.

Accordingly, the ALJ's determination to discount Dr. Alpern's opinions based on the fact that his finding that plaintiff was "markedly symptomatic" was "singular and isolated," and that he made inconsistent statements regarding the level of plaintiff's symptoms, were not specific and legitimate reasons supported by substantial evidence for discounting Dr. Alpern's opinions.  That being said, the only relevant *opinions* offered by Dr. Alpern were that plaintiff cannot return to her past relevant work, and that she was positive for a diagnosis of fibromyalgia.  The ALJ also determined that plaintiff was unable to perform her past relevant work and had the severe impairment of fibromyalgia.  Thus, any error was harmless.

### c.  Dr. Salick

As discussed above, in February 2016 Dr. Salick examined plaintiff and reviewed her medical records.  [Id. at 566-642.]  Plaintiff contends the following:

> [Her] pain was rated at 7 to 9 out of 10; pain was constant and significantly aggravated by activity; Dr. Salick reported that pain interfered with [plaintiff's] ability to lift 10 pounds, sit for half an hour, stand for half an hour, travel for 1 hour, write or type and with concentration and memory.  Dr. Salick also reported that pain significantly interfered with sleep, social activities and daily activities including the ability to complete routine chores.  . . . Dr. Salick also opined that [plaintiff] had sensitivity to loud noises, bright lights, odors and cold.

[JS at 11 (citing AR at 630, 631, 633, 637, 642).]  Plaintiff further contends that although the ALJ agreed with Dr. Salick's conclusion that plaintiff was unable to perform her past work, he "failed to address additional limitations included in Dr. Salick's report," including his opinions that "pain interfered with [her] ability to:  lift 10 pounds, sit for half an hour, stand for half an hour, travel for 1 hour, write or type and with concentration and memory as well as sensitivity to loud noises, bright lights, odors and cold."  [Id. at 11-12 (citing AR at 631, 633, 637, 642).]

The Court has reviewed the records cited to by plaintiff and determines that with respect to the information she reported above, the *only* accurate statements made by plaintiff were that her "pain was rated at 7 to 9 out of 10" and that it was "constant and significantly aggravated by activity."  That is because plaintiff only *implies* that those two statements were made by Dr. Salick, rather than actually attributing them to Dr. Salick as she did with every other statement above.  However, *every* one of those statements was reported *not by* Dr. Salick, but *to* Dr. Salick *by plaintiff* in the various forms she completed as part of Dr. Salick's evaluation.  [See AR at 630-35, 637, 642.]  Dr. Salick merely recommended that plaintiff receive education about her condition, take up a multi-disciplinary exercise program "best facilitated by aquatic therapy," see a rheumatologist or pain management specialist, consider medications approved by the FDA to treat fibromyalgia, and receive ongoing psychiatric care and an orthopedic follow up.  [Id. at 620.]  There was no error in the ALJ's alleged failure to address functional limitations that were never suggested by Dr. Salick himself.

Remand is not warranted on this issue.


### d.    Dr. Natacha Telusca and Dr. Jayson A. Hymes

On September 19, 2016, Drs. Telusca and Hymes saw plaintiff for a one-time pain management consultation, with respect to her cervical spine and upper extremity pain.  [Id. at 430-34.]  Plaintiff notes that, on examination, the clinical findings included cervical paraspinal tenderness, cervical facet tenderness at C5-T1, decreased range of motion in all cervical spine planes, "weakness to grip in 1st-2nd digit opposition, 1st-5th digit opposition bilaterally and decreased sensation in right 2nd to 5th digits."  [JS at 12 (citing AR at 433).]  Plaintiff was

1  diagnosed with chronic pain syndrom; rule out radiculopathy in the cervical region; and myofascial

2  pain syndrome.   [AR at 433.]   It was recommended that she be treated with a neuropathic

3  medication; engage in light aerobic exercise; maintain a proper weight; obtain a cervical MRI; and

4  undergo a pain psychology evaluation to help her better understand her chronic pain condition

5  and teach her new skills to deal with the pain.   [Id.]   Plaintiff complains that the ALJ failed to

6  discuss these findings or to provide any reasoning for rejecting limitations in this report.   [JS at

7  12.]

8        The Court determines that there simply are no limitations suggested by either Dr. Telusca

9  or Dr. Hymes in this report.   Neither is there any diagnosis or condition that was not considered

10  by the ALJ.   For instance, the ALJ thoroughly addressed plaintiff's carpal tunnel-related issues,

11  as well as an electro-diagnostic examination that failed to confirm the presence of cervical

12  radiculopathy, and a cervical x-ray that was unremarkable.   [AR at 22 (citing id. at 345, 481).]

13        Remand is not warranted on this issue.

14

15        **e.**    **Jerold Litoff, M.D.**

16        Dr. Litoff, an orthopedic surgeon, examined plaintiff in September 2014 for worker's

17  compensation purposes.   [Id. at 468-93.]   In his September 3, 2014, report, Dr. Litoff opined that

18  plaintiff should be precluded from repetitive gripping, grasping, flexion and extension activity with

19  respect to her bilateral elbows; from repetitive gripping or grasping activity with respect to her

20  bilateral hands; and that she should receive a ten-minute break from either repetitive hand

21  activities or keyboarding every hour.   [Id. at 487.]   On October 19, 2016, he examined plaintiff and

22  reviewed her medical records for a "Panel Qualified Medical Re-evaluation."   [Id. at 435-50.]

23  Based on his examination and record review, Dr. Litoff determined that plaintiff had cervical

24  myofascial pain; lumbosacral myofascial pain; and fibromyalgia.   [Id. at 446.]   Dr. Litoff

25  recommended that with respect to plaintiff's cervical spine, she should be permitted to rest from

26  computer work for 5 minutes out of every hour worked; with respect to her lumbosacral spine, she

27  should not engage in prolonged sitting, i.e., she should work no longer than 50 minutes out of an

28  hour in a sitting position.   [Id. at 448.]   He did not make any recommendations in this report

1  relating to plaintiff's gripping, grasping, flexion, and extension with respect to her elbows or hands.

2        Plaintiff notes that the ALJ accepted Dr. Litoff's 2014 and 2016 limitation regarding limited

3  keyboarding, and his 2014 limitation due to issues with her bilateral elbows to no repetitive

4  gripping, grasping, flexion or extension activity, which she acknowledges were accommodated in

5  the RFC determination by a limitation to frequent fingering and handling, and a limitation to 45

6  minutes of computer work in an hour.  [JS at 13.]  She argues, however, that the ALJ "rejected

7  Dr. Litoff's [2014] opinion precluding repetitive flexion and extension of the elbows," and failed to

8  address his 2016 sitting limitations and opinion that plaintiff "would experience pain with prolonged

9  standing, twisting, turning and positioning of the neck."  [Id. (citing AR at 447, 487).]

10        Once again, plaintiff confuses her subjective symptom allegations with a doctor's opinion.

11  In his 2014 and 2016 reports, Dr. Litoff did not state that plaintiff would experience cervical pain

12  with prolonged standing, twisting, turning, and positioning of the neck.  Indeed, Dr. Litoff noted

13  these complaints under "Subjective Factors of Disability" -- thus, these were plaintiff's descriptions

14  of her symptoms to Dr. Litoff.  [AR at 447, 486.]  In both reports, under "Objective Factors of

15  Disability" with respect to plaintiff's cervical spine, her lumbosacral spine, and her bilateral elbows,

16  Dr. Litoff indicated "None."  [Id. at 447, 486.]  Dr. Litoff did not suggest any functional limitations

17  as a result of plaintiff's cervical pain complaints, other than his limitations on resting from

18  computer work for a portion of every hour worked.

19        The Court finds that the ALJ's RFC determination that plaintiff could only frequently push

20  and pull, finger and handle, and would only be able to keyboard for 45 minutes out of an hour,

21  accommodated Dr. Litoff's opinions regarding plaintiff's preclusion from repetitive gripping,

22  grasping, flexion or extension activity, fingering, or handling, and his opinion that plaintiff should

23  rest from computer work for ten minutes of every hour.

24        Remand is not warranted on this issue.

25

26        **f.**    **Justin Wu, D.O.**

27        Dr. Wu, a physician at the Arthritis & Osteoporosis Medical Center, Inc., treated plaintiff

28  from January 2018 for her pain and fibromyalgia.  [JS at 13-14 (citing AR at 950).]   On

examination, Dr. Wu reported elbow joint pain, shoulder joint pain, neck pain elicited by motion, tenderness on palpation of the fingers on the PIP joints, tenderness on palpation of the elbow, tenderness on palpation of the lateral epicondyle elbow, abnormal motion of shoulders, tenderness on palpation of the hips, tenderness on palpation of the trochanteric bursa, and that plaintiff was positive on 14 out of 18 fibromyalgia trigger points.  [Id. at 14 (citing AR at 951-52).] In March 2018, Dr. Wu provided trigger point and right elbow injections, as well as a right elbow brace.  [Id. (citing AR at 938-40, 944-46).]  In May 2018, Dr. Wu noted plaintiff was positive for 14 out of 18 trigger points and 8 out of 28 tender joints, and opined that plaintiff had "severe" fibromyalgia syndrome with diffuse myalgia.  [Id. (citing AR at 934).]  He also noted that plaintiff's symptoms were "improved" with the right elbow brace, and she had "good relief" from the myofascial trigger points injections, but that the relief from the right elbow steroid injection was only "temporary."[9]  [AR at 935.]

The ALJ noted that Dr. Wu recommended plaintiff undergo "serology testing for differential analysis purposes."  [AR at 21.]  He also stated that "inconsistent with the diagnosis of fibromyalgia, serology studies at this time did reveal evidence of an underlying infection, hepatitis B exposure, kidney dysfunction and evidence of inflammation (a positive ESR), suggesting other potential conditions which might be causing [plaintiff's] symptoms." [Id. (citing id. at 958, 960, 965, 966, 970).]  The ALJ noted that Dr. Wu "continued to treat [plaintiff] for fibromyalgia on a relatively regular basis thereafter and classified her fibromyalgia as 'severe' during a May 23, 2018, examination, but only on this occasion."  [Id. at 21.]  The ALJ also noted that plaintiff's treatment for fibromyalgia began only in 2018, and although it was "described as 'marked' and 'severe' on 2 occasions, these assessments were made more than 3 years apart," and "[d]uring the interim [she] was described as 'doing well.'"  [Id. at 21-22.]  The ALJ concluded that plaintiff's fibromyalgia symptoms were no more than "modest except on rare and isolated occasions" and that the

---

[9]    Although plaintiff asserts that Dr. Wu provided plaintiff with trigger point and right elbow injections at both the March 2018 and May 2018 visits, it appears that the injections were given *only* at the March 2018 visit and that the results were reviewed at the follow-up visit on May 2018. [Compare AR at 938, 941 with id. at 635.]

1   medical record does not demonstrate any greater limitations than those identified in the RFC "for

2   any period of 12 months or more at times material hereto."  [Id. at 22.]

3          Plaintiff contends that the ALJ failed to provide adequate discussion or consideration of Dr.

4   Wu's records, "which included reports of significant widespread body pain supported by clinical

5   findings," and that the ALJ erred when he "reasoned that [plaintiff] did not receive fibromyalgia

6   specific treatment with Dr. Wu until January 2018 and he only classified her fibromyalgia as

7   severe on one occasion in May 2018."  [JS at 14 (citing AR at 21).]  She also takes issue with the

8   ALJ's conclusion that plaintiff's fibromyalgia symptoms "were 'modest' except on ra[re] occasions."

9   [Id. at 15 (citing AR at 22).]  Plaintiff contends that the ALJ "failed to discuss any limitations

10  associated with clinical findings documented in Dr. Wu's reports including limitations in use of the

11  right arm and elbow due to right lateral epicondylitis requiring a prescribed right elbow brace and

12  treating with right elbow steroid injections in March and May 2018."  [Id. at 15 (citing AR at 935,

13  938); but see supra n.9.]  She also argues that the ALJ "neglected to discuss the impact of

14  increased fibromyalgia pain, as evidenced by Dr. Wu's clinical findings, requiring treatment with

15  trigger point injections on two occasions."  [Id. (citing AR at 935, 938); but see supra n.9.]

16         Plaintiff deems the ALJ's discussion of all of her medical records as "cherry picking" to

17  support the RFC.  [Id. at 15.]  She also argues that Dr. Wu specifically opined that plaintiff had

18  "failed prior treatments" and found plaintiff's fibromyalgia to be "severe as of [her] most recent

19  treatment with Dr. Wu in May 2018," which the ALJ failed to consider.  [Id. (citing AR at 950).]

20         Dr. Wu did not provide any opinion on plaintiff's functional limitations.  The ALJ reviewed

21  Dr. Wu's records and reasonably determined that those records did not reflect any functional

22  limitations greater than those set forth in the ALJ's RFC determination.  He also considered Dr.

23  Wu's recent finding that plaintiff's condition was "severe."[10]  Based on the Court's review of the

24  record, the ALJ provided specific and legitimate reasons for discounting Dr. Wu's report.

25

26         [10]  The ALJ's other finding that plaintiff's "condition was described as 'marked,'" relates to Dr.

27  Knight's finding that plaintiff was "markedly symptomatic," which, as discussed above, did not
    reflect the severity of plaintiff's symptoms.  Thus, Dr. Wu was the only physician who described

28  the level of plaintiff's symptoms -- in 2018 -- as "severe."

1    Remand is not warranted on this issue.

2

3         **g.    Jerry Chuang, M.D., Consultative Examiner**

4    On July 29, 2016, Dr. Chuang performed a complete orthopedic consultation of plaintiff.

5    [AR at 409-13.] Dr. Chuang had no medical records available for review. [Id. at 409.] Dr. Chuang

6    noted the following clinical findings: (1) tenderness to palpation and spasm of the cervical spine,

7    as well as painful and limited range of motion with reduced flexion and extension; (2) tenderness

8    to palpation and spasm of the lumbar spine, with painful and limited range of motion with reduced

9    flexion and extension; (3) positive straight leg raising, supine and seated, bilaterally; (4)

10   tenderness to palpation of the bilateral shoulders with mildly painful but full range of motion; (5)

11   full and painless range of motion in all planes for the elbows with no tenderness on palpation and

12   normal alignment and contour; (6) normal alignment and contour of the wrists, with no tenderness

13   on palpation, and mildly painful but full range of motion; positive Tinel's test bilaterally indicating

14   "carpal tunnel syndrome of mild degree"; (7) tenderness and mild limitation in fine and gross

15   manipulation of the hands bilaterally with mildly painful but full range of motion; (8) no tenderness

16   on palpation and full and painless range of motion for the hips, knees, ankles, and feet; and (9)

17   an x-ray of the lumbar spine showing mild spondylosis and disc degeneration. [Id. at 410-12.]

18   Dr. Chuang noted his clinical impressions of mild cervical radiculopathy; mild bilateral shoulder

19   strain; mild bilateral carpal tunnel syndrome post surgical release; and mild lumbosacral

20   radiculopathy due to autolevel spondylosis and disc degeneration as confirmed by x-ray. [Id. at

21   412-13.]   He opined that plaintiff can lift and carry 50 pounds occasionally and 25 pounds

22   frequently; walk, stand, and sit for six hours out of an eight-hour day; is able to frequently use her

23   hands for fine and gross manipulation; and is able to frequently bend, crouch, stoop, and kneel.

24   [Id. at 413.]

25   The ALJ stated the following about Dr. Chuang's opinion:

26   I accept, generally, the assessment of the state agency examining medical
     consultant. He opines that [plaintiff] is limited to a range of medium exertion. As
27   I shall explain, his assessment is consistent with and well supported by the objective
     medical evidence, when considered as a whole. However, in light of the diagnosis
28   of fibromyalgia, a condition that is frequently present with only limited objective

1    medical support, I also afforded [plaintiff's] testimony and statements some weight.
2    Accordingly, I reduced her residual functional capacity to [a range] of light exertion
     as described above.

3    [Id. at 20.]

4    Plaintiff contends that the ALJ relied on Dr. Chuang's opinions, "with additional limitations

5    formulated by the ALJ," and "erred in rejecting and ignoring greater limitations documented in

6    treating physician records,"  [JS at 3, 17.]  She argues that the ALJ failed to provide specific and

7    legitimate reasons, supported by substantial evidence, for rejecting the treating and examining

8    physician's opinions in favor of the one-time consultative examination by Dr. Chuang.  [Id. at 17

9    (citations omitted).]  She contends that the ALJ "failed to explain how Dr. Chuang's opinion was

10   consistent with the opinions of [plaintiff's] treating and examining physicians who opined that she

11   was unable to perform prolonged sitting, standing and walking due to exacerbated pain," and also

12   determined that "additional limitations regarding [plaintiff's] elbow were not warranted, despite Dr.

13   Wu's records documenting significant elbow pain and clinical findings in 2018, because Dr.

14   Chuang reported a normal elbow examination in July 2016."  [Id. (citing AR at 24).]

15   The Court notes that despite Dr. Chuang's determination that plaintiff could perform a

16   limited range of medium work, the ALJ nevertheless gave some weight to plaintiff's subjective

17   symptom testimony, and the opinions of her treating and examining physicians, and reduced that

18   exertional level to a range of light work.  [AR at 20.]  He also took plaintiff's carpal tunnel issues

19   into account when he limited her to frequent pushing, pulling, fingering, and handling.  [Id. at 22,

20   23-24.]

21   Based on the Court's review of the record, and consistent with its discussion herein of the

22   ALJ's consideration of plaintiff's treating providers, the ALJ provided specific and legitimate

23   reasons supported by substantial evidence for giving more weight to Dr. Chuang's findings than

24   to plaintiff's treating providers.

25   Remand is not warranted on this issue.

26

27   **3.    Conclusion**

28   Although plaintiff argues that her treating and/or examining physicians imposed limitations

21

on her ability to stand or walk, she points to no such evidence in the record (other than those instances where she herself stated such limitations).  Similarly, with respect to plaintiff's elbow limitations, although the ALJ did not find much evidence to support such limitations, he nevertheless limited plaintiff to frequent pushing, pulling, fingering, and handling and to no more than 45 minutes of computer work per hour.  And, despite the findings of Dr. Litoff and Dr. Chuang that plaintiff was capable of a range of medium-level work, the ALJ, after considering plaintiff's subjective symptom testimony, fibromyalgia, carpal tunnel issues, and her obesity, gave her the benefit of the doubt in finding that she was capable of only a range of light work.  As set forth above, the Court determines that the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting any more extreme limitations suggested by plaintiff or her treating and examining physicians.

Remand is not warranted on this issue.

**B.      SUBJECTIVE SYMPTOM TESTIMONY**

**1.      Legal Standard**

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[11] 16-3p went into effect.  See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms.  SSR 16-3p, 2017 WL 5180304, at *2.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation."  Id.; Trevizo, 871 F.3d at 678 n.5.  Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The

---

[11]    "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."  SSR 16-3p, 2017 WL 5180304, at *11.  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  Id. at *2.  The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required:  that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'"  Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).  Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis."  Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Id. (quoting Garrison, 759 F.3d at 1014-15; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted).  If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ."  SSR 16-3p, 2017 WL 5180304, at *4.  In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due

to pain or other symptoms.  20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4  ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing.  Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements."  SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014).  In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  Id.  "If an individual's various statements about the

intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. Id. at *9.  The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.  Id.

### 2.    Discussion

Plaintiff states that she testified that she stopped working and was released from her most recent job because "she was not reliable, tardy a lot, called in sick often and used up all her sick and vacation time"; was late or absent more than two days per week; her daily activities are significantly limited; she has difficulty keeping her home clean and could not mop, sweep, or scrub pots and pans, and relies on her mother to help with housework; can sometimes drive short distances, and sometimes cannot even make it to the pharmacy to pick up prescriptions; her pain affects her concentration and memory; she has difficulty standing and waiting for her medication at the pharmacy for longer than ten minutes; could only carry four pounds or less; and on a good day could "transition from going to the store to washing a few dishes," but other times "she would go home and lay on the couch and do a little bit here and there." [JS at 33-34 (citing AR at 47-48, 56-60).]

The ALJ acknowledged that although symptoms of fibromyalgia can "vary greatly, from mild to debilitating," plaintiff's claim that her symptoms are "both severe and debilitating" are not consistent with the medical record.  [AR at 20.]  Then, the ALJ summarized many of the same records previously discussed above, including, but not limited to, the following:  (1) Dr. Salick diagnosed fibromyalgia, but "afforded [plaintiff] a 20% whole person impairment due to this condition," and despite plaintiff's "claims regarding the nature and severity of her symptoms, the record reflects that she has received remarkably little fibromyalgia treatment at times material

hereto"; (2) in November 2014, fibromyalgia and depression were "noted as ongoing diagnoses, in passing, by Sharon Orrange, M.D., during an unrelated bariatric surgery follow-up"; (3) Dr. Knight "noted [plaintiff's] [fibromyalgia] diagnosis twice and referred [her] to a rheumatologist for treatment in May 2015 . . . [but] his records are devoid of any fibromyalgia specific analysis or assessments"; (4) in May 2017, Hugh Bach, M.D., noted plaintiff's reported history of fibromyalgia, and "found multiple tender trigger points, consistent therewith and adopted the diagnosis"; the ALJ noted, however, that it was "also important to note that [Dr. Bach] describe[d] [plaintiff] as 'overall doing well' and recommended that she engage in regular exercise"; and (5) it was not until plaintiff was seen by Dr. Wu in January 2018, that she received fibromyalgia-specific treatment, although Dr. Wu also ordered serology testing that reflected evidence of an underlying infection, hepatitis B exposure, kidney dysfunction, and evidence of inflammation, suggesting other potential conditions; moreover, although Dr. Wu continued to treat plaintiff for fibromyalgia, he classified it as "severe" only once -- during a May 2018 examination -- three years after the only other record that termed plaintiff's condition to be "marked."[12]  [Id. at 20-22 (citations omitted).]

The ALJ also stated the following with respect to plaintiff's testimony regarding her pain and alleged limitations:

> I also considered [plaintiff's] allegations regarding and including pain and her ability to work.  However, due to the lack of medical evidence and the inconsistencies in her statements and actions, I am unable to afford her allegations full weight.  . . . As previously detailed, there is a lack of objective evidence indicating that [plaintiff's] impairments are more likely than not to support her allegations regarding her capacity to perform work related activities.  There simply is not enough evidence demonstrating the intensity, persistence and limiting effects of [her] alleged impairments.
>
> However, I do not rely solely on the objective evidence and medical opinions in assessing [plaintiff's] disability claim.  The record also contains inconsistencies indicating that the intensity, persistence and limiting effects of her symptoms are less likely to reduce her capacity to perform work related activities.  To begin, [she] has not treated in a manner consistent with her disability claim.  Specifically, [she] alleges that she experiences chronic and severe symptoms, particularly pain

---

[12]   This appears to refer to Dr. Alpern's 2015 finding that plaintiff was "markedly symptomatic," which, as discussed above, referred to the number of positive trigger points along with plaintiff's complaint of pain throughout her body rather than to the severity level of her symptoms. In 2016, Dr. Salick, who provided the only opinion as to the level of plaintiff's pain, described her symptoms as "constant and moderate."

1   associated with her fibromyalgia.  Inconsistently, however, as explained above, her
    fibromyalgia specific treatment was virtually nonexistent prior to 2018.  Moreover,
2   even her current treatment does not fully support the level of symptoms she alleges.

3   Similarly, while [she] alleges that she is in constant debilitating pain, current reports
    of severe pain to treating medical sources, as noted above, have been few and far
4   between.  While the record does reflect that [she] was examined by a pain
    management specialist in September 2016, there is no record of any follow up
5   treatment or care, as one would expect if an individual allege[s] chronic debilitating
    pain.

6

7   I am also mindful that [plaintiff] produced an invalid MMPI result during psychology
    testing, suggesting the level of symptom overstatement of exaggeration.  In this
    vein, [plaintiff] testified that her symptoms are so severe, that she feels exhausted,
8   that she must rest for up to 5 hours each day.  She also reports that she must sleep
    3 to 4 hours per day due to her symptoms, as well.  However, I find few reports to
9   this or similar effect in her treatment records, as one would expect if one were
    experiencing debilitating fatigue/exhaustion/pain that she asserts.  As a practical
10  matter, reports of active (nonhistorical) fatigue/exhaustion to treating medical
    sources at times material hereto has been infrequent.

11

12  [Id. at 25 (citations omitted).]

13          Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

14  subjective symptom testimony.  [JS at 31.]  She argues that although the ALJ gave plaintiff's

15  subjective symptom testimony "some weight," and stated that he could not give those statements

16  full weight "due to 'lack of medical evidence' and 'inconsistencies in her statements and actions,'"

17  he failed to "identify any specific inconsistencies in either her testimony or in the medical

18  evidence."  [Id.]  Instead, plaintiff alleges that he "merely concluded that there was not sufficient

19  objective evidence to support her allegations," and improperly determined that (1) "she was not

20  treated in a manner consistent with her disability claim"; (2) her fibromyalgia treatment was

21  virtually non-existent prior to 2018; (3) her current treatment did not support the level of symptoms

22  she alleged; and (4) her reports of "severe pain were 'few and far between.'"  [Id. (citing AR at

23  25).]

24          Plaintiff also states that there is no evidence of malingering, and that each of her treating

25  and examining physicians provided findings and diagnoses consistent with her alleged symptoms.

26  [Id. at 33.]  She asserts that there are no reports of activities inconsistent with her reported

27  limitations, and that she consistently reported her symptoms to her treating and examining

28  physicians.  [Id. at 34.]  She contends that her main problems are pain and constant fatigue

affecting her neck and arms, which is consistent with symptoms and clinical findings documented in records from Dr. Knight and Dr. Wu, as discussed above.  [Id. at 34-35.]  She notes that the ALJ provided a list of reasons for discounting plaintiff's subjective symptom testimony, but "failed to support these reasons with specific examples of contradictions between testimony and medical evidence."  [Id. at 35.]  For instance, he failed to explain "how worker's compensation records dating from her onset date in December 2013 through December 2017 with Dr. Knight and treatment records with Dr. Wu from January to May 2018 were inconsistent."  [Id. (citing AR at 25).]  Additionally, although the ALJ stated that plaintiff's fibromyalgia treatment was "virtually nonexisten[t] prior to 2018," plaintiff contends that the record demonstrates that she was diagnosed with fibromyalgia by "Dr. Alpern in March 2015, Dr. Salick in February 2016, Dr. Hymes in September 2016, Dr. Litoff in October 2016 and Dr. Wu in January 2018 all based on significant clinical findings."  [Id.]  She further notes that although the ALJ reasoned that plaintiff's "current treatment did not support the level of symptoms she alleged," he "failed to explain how treatment with pain medications along with trigger point and right elbow injections with Dr. Wu were inconsistent" with her testimony.  [Id.]  She also states that although the ALJ found that plaintiff's complaints of severe pain were few and far between, that finding "is clearly inaccurate as she continually presented with symptoms of ongoing pain from December 2013 to May 2018."  [Id.]  Plaintiff concludes that although the ALJ "did cite some reasons for rejecting [her] testimony . . . those reasons fail to meet the Ninth Circuit's standard for being specific, clear and convincing" as the ALJ failed to explain how plaintiff's medical records contradicted her allegations, and failed to discuss any of her specific testimony other than her alleged constant and debilitating pain.  [Id. at 40-41.]

A review of the Administrative Record reflects no evidence that plaintiff reported to her doctors that she spends most of her day resting (five hours per day) and/or sleeping (3-4 hours per day), because she is so exhausted from her symptoms.  While plaintiff may have been consistently diagnosed with fibromyalgia since 2015, and she may have been consistent in reporting that she experiences pain from her fibromyalgia, there is only one description of that pain as severe by a treating provider -- Dr. Wu in 2018 -- along with another description of it as

constant and moderate in 2016.  Even after plaintiff's visit to the pain management specialists in September 2016 (Drs. Telusca and Hymes), as noted by the ALJ there is no evidence of any follow-up treatment or care.  The ALJ's determination that there was a lack of objective medical or other record evidence to support plaintiff's debilitating pain rendering her incapable of performing work-related activities, as well as a lack of consistent treatment for fibromyalgia until 2018, gaps in treatment, and evidence of symptom exaggeration, constitute specific, clear and convincing reasons supported by substantial evidence for discounting plaintiff's subjective symptom testimony.  Trevizo, 871 F.3d at 679; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Ghanim, 763 F.3d at 1163-64 (ALJ considers the consistency of the individual's own statements); Molina, 647 F.3d at 1112 (ALJ may consider any inadequately explained or unexplained failure to pursue or follow treatment); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting evidence of symptom exaggeration is a valid basis for discounting a claimant's claims of disability).

Remand is not warranted on this issue.

## C.   RFC DETERMINATION

Plaintiff contends that the ALJ erred in formulating the RFC, stating that it was not supported by the record as a whole, and that plaintiff's "treating and examining physician's . . . opinions included greater limitations than those found by the ALJ."  [JS at 42.]  She also argues that the ALJ failed "to address the combined effects of all of the Plaintiff's impairments, including pain and subjective symptoms, and consider how the combination of [her] impairments affects [her] ability to do basic work activities."  [Id. at 42-43 (citing Smolen, 80 F.3d at 1282 (9th Cir. 1996)).]

Plaintiff's arguments are based on the same issues she raised above that were rejected by the Court.  The ALJ properly considered the only RFC assessments and limitations made by plaintiff's doctors -- Dr. Litoff and Dr. Chuang -- as well as the functional limitations suggested by Dr. Knight, and, after considering plaintiff's subjective complaints of pain and her obesity, modified

Drs. Litoff and Chuang's RFC determinations (that plaintiff was capable of a range of medium work), to find plaintiff capable instead of a range of light work.

For the same reasons discussed above with respect to plaintiff's other two issues, the Court finds that remand is not warranted on this issue.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  July __15__, 2020          _____
                                                            PAUL L. ABRAMS
                                                  UNITED STATES MAGISTRATE JUDGE